IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| CYNTHIA D. SAXON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | No. 21-01988 |
| Defendant. | : | |
| | : | |

### MEMORANDUM OPINION

**PAMELA A. CARLOS**
**U.S. MAGISTRATE JUDGE**                                                                 **January 5, 2024**

      Plaintiff Cynthia D. Saxon ("Plaintiff" or "Ms. Saxon") appeals the Commissioner of Social Security's final decision to deny her claim for benefits. She contends that the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination is not supported by substantial evidence because she failed to properly evaluate the opinions of (1) treating psychiatrist, Dr. Annemarie Wolf-Schatz ("Dr. Wolf-Schatz") and (2) consultative examiner, Dr. Sari Fleischman, PhD ("Dr. Fleischman"). The Commissioner disagrees, arguing that the ALJ's analysis was appropriate under the governing regulations. Specifically, the Commissioner contends that the ALJ's opinion cited to the record, as well as Dr. Wolf-Schatz's own treatment notes, in finding her opinion to be unpersuasive. Moreover, the Commissioner claims that because Dr. Fleischman's opinion was issued several years before Plaintiff's application date it is not relevant to the ALJ's ultimate determination. I disagree. Accordingly, for the reasons that follow, I will grant Ms. Saxon's request for review and remand this matter to the Commissioner for further proceedings in accordance with this opinion.

I.      BACKGROUND

   A.      **Factual and Procedural History.**

Ms. Saxon was born on April 1, 1969. R.91, 217. She did not graduate high school but reported that she previously worked as a cashier at both a fast-food establishment and a retail store, and also as a collections agent. R.232-235. She has not worked since applying for Title XVI Supplemental Security Income ("SSI") on June 10, 2019. R.21, 39.

In her application, Ms. Saxon alleged that she became unable to work because of a disabling condition on February 2, 2019 and that she remains disabled. R.210. Specifically, she alleged that she is unable to work due to depression, anxiety disorder, high blood pressure, and sleep problems. R.244. Her claims were initially denied on September 3, 2019, *see* R.130-34, and again upon reconsideration on November 21, 2019, *see* R.139-42. Ms. Saxon then requested a hearing before an ALJ, *see* R.143, and a telephone hearing was held on April 30, 2020, *see* R.33-75 ("hearing transcript"). After this hearing, the ALJ issued a written decision on May 15, 2020 denying Ms. Saxon's claim. R.16-31 ("ALJ Decision"). The Appeals Council denied Ms. Saxon's subsequent request for review, meaning the ALJ's written opinion became the final decision of the Commissioner. *See* R.1-3. Ms. Saxon now timely appeals.[1]

   B.      **ALJ's Decision.**

The ALJ evaluated Ms. Saxon's claims using the five-step sequential analysis set forth in the Social Security regulations.[2] Beginning at step one, the ALJ determined that Ms. Saxon did not engage in substantial gainful activity. R.21.

---

[1]     The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C § 636(c). *See* ECF Doc. Nos. 4, 9, 18

[2]     The sequential analysis requires the ALJ to evaluate (1) whether claimant's work, if any, qualifies as "substantial gainful activity"; (2) whether the claimant's medically determinable impairments are severe; (3) whether any of the claimant's impairments "meet or equal the requirements for impairments listed in the regulations"; (4) whether the claimant is able to perform "past relevant work" considering her residual functional capacity; and (5)

At step two, the ALJ found that Ms. Saxon suffered from the following severe impairments: depression and anxiety. R.21 (citing 20 CFR 416.920(c)). The ALJ further found that Ms. Saxon had several other medically determinable events, noting that she has been "medically managed for hypertension," and that she was "involved [in] a motor vehicle accident in July 2018." R.21. However, the ALJ found that there was no evidence of any complications secondary to hypertension and no medication side effects, and that there was no evidence of fracture, dislocation, or destructive osseous pathology following her accident. R.21. The ALJ also found that although Ms. Saxon was diagnosed with insomnia, her records indicated that she "has only intermittent problems sleeping at night," and that her medications have been effective in helping her sleep. R.22. Finally, the ALJ noted that Ms. Saxon raised alleged problems with her hip joints at the hearing, but concluded there was "no objective diagnostic evidence to support the existence of any medically determinable hip impairment." R.22.

Moving on to step three, the ALJ concluded that none of Ms. Saxon's severe impairments alone, or in combination, met or medically equaled the requirements of the impairments listed in the regulations. R.22-23. Specifically, the ALJ compared Ms. Saxon's impairments to listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). R.22-23.

Before reaching step four, the ALJ considered Ms. Saxon's RFC.[3] After reviewing the objective medical evidence and the subjective opinions in the record, the ALJ determined that Ms.

---

whether the claimant can adjust to other work considering her residual functional capacity, age, education, and work experience. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201-202 (3d Cir. 2019) (citing 20 C.F.R. § 416.920(a)(4)(i)-(v)). The claimant has the burden of proof at steps one through four, and then at step five, the burden shifts to the Commissioner of Social Security. *Id.* at 201.

[3]   Residual functional capacity, or RFC, is defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).

Saxon "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)[4] except the claimant can perform all postural activities on a frequent basis, [and] can only occasionally climb ladders." R.24. The ALJ further found:

> [Ms. Saxon] should avoid unprotected heights and hazards. [Ms. Saxon] has no manipulative limitations and is able to push and pull with her bilateral upper extremities and operate foot controls bilaterally with her bilateral lower extremities. [Ms. Saxon] can perform detailed uninvolved SVP 1 or SVP 2 work in a stable environment. She requires a low stress work environment with no strict production or pace requirements with few changes in a routine work setting. [Ms. Saxon] has good judgement and good insight. She requires less than occasional interaction with [the] public.

R.24.

At step four, the ALJ found that given Ms. Saxon's RFC, she could not perform any past relevant work. R.26-27. The ALJ then proceeded to step five and identified multiple jobs in the national economy that Ms. Saxon could perform, including housekeeper/cleaner and office helper. (R.27-28). As such, the ALJ concluded that Ms. Saxon was not disabled as defined by the Social Security Act. R.28

## II. STANDARD OF REVIEW

Judicial review of a social security disability determination is "limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The agency's factual findings are "conclusive," and therefore must be upheld, if they are supported by "substantial evidence." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding standard. *Id.* at 1154. All it means is "such relevant evidence as a reasonable mind might accept as

---

[4] The regulations define "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* The Social Security Administration has instructed that, "[t]o be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." *Id.* For example, "[i]f someone can do light work, [the Social Security Administration] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

adequate to support a conclusion." *Id*. at 1153 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). When reviewing for substantial evidence, courts cannot "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). But any legal conclusions are reviewed under a plenary standard. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019).

**III.   DISCUSSION**

Ms. Saxon appeals the ALJ's unfavorable decision on two grounds. First, she claims that the ALJ failed to properly evaluate the opinion of treating psychiatrist, Dr. Wolf-Schatz. ECF Doc. No. 12 at 10-16. Specifically, she contends that the ALJ mischaracterized the evidence and failed to discuss any of the clinical findings. *Id.* at 12. Instead, according to Ms. Saxon, the ALJ simply described the examination by treating providers and examining sources as "benign" without evaluating the "detailed and extensive" medical treatment records that accompanied Dr. Wolf-Schatz's opinion. *Id.* at 12-13. Second, Ms. Saxon alleges that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to evaluate the opinion of consultative examiner Dr. Fleischman. *Id.* at 16-18. Her failure to do so, Ms. Saxon contends, constitutes reversible error because Dr. Fleischman's opinion is not consistent with the ALJ's finding that she could work at the jobs cited by the vocational expert. *Id.*

The Commissioner responds that the ALJ's decision was reasonable and supported by substantial evidence. *See* ECF Doc. No. 13. Specifically, the Commissioner contends that the ALJ's opinion cited to the record, as well as Dr. Wolf-Schatz's own treatment notes, in finding her opinion to be unpersuasive. The Commissioner explained that although the ALJ was not required

to discuss every piece of medical evidence of record, *id.* at 13, the judge adequately explained that Ms. Saxon "only required conservative mental health treatment after her SSI application date," and her "examinations revealed relatively stable findings." *Id.* at 14.[5] Moreover, the Commissioner claims that because Dr. Fleischman's opinion was issued several years before Plaintiff's application date it is not relevant to the ALJ's ultimate determination. *Id.* at 14-16. After careful review, and as explained more thoroughly below, I find that the ALJ's analysis was inadequate such that remand is justified.

      A.      **The ALJ Erred By Failing To Consider The Evaluation of Dr. Fleischman.**

At the onset, the Court is mindful of several fundamental legal propositions underlying its deferential standard of review. First, the Court "must not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford*, 399 F.3d at 552). In other words, the Court must not re-weigh the evidence before the ALJ, but instead must assess whether substantial evidence supports the ALJ's findings. In doing so, the Court must determine whether the ALJ's decision "meets the burden of articulation demanded by the courts to enable informed judicial review." *Kenyon v. Saul*, No. 1:20-CV-1372, 2021 WL 2015067, at *5 (M.D. Pa. May 19, 2021). In this regard, the ALJ is not required to "employ particular 'magic' words" or "adhere to a particular format in conducting his analysis." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir. 2004)). However, the Court requires—at the very least—that the ALJ "set forth the reasons for [her] decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

---

[5]      In her decision, the ALJ cites generally to Exhibit B13F to support her conclusion that Ms. Saxon underwent "routine and conservative mental health treatment" and that she had "relatively benign mental status examinations." R.25-26 (citing Ex. B13F). However, none of Ms. Saxon's providers use the terms "conservative" and/or "benign" to describe her mental health treatment or status. Indeed, those terms are only used to describe Ms. Saxon's physical exam in connection with reported back pain. *See, e.g.,* R.472 ("No previous xray in chart; none in Meditech. However, given the largely benign physical exam, will not check xray at this time. Will treat conservatively.").

With these principles in mind, the Court agrees with Ms. Saxon that the ALJ committed reversible error in failing to address the psychiatric evaluation of Dr. Fleischman when making the RFC determination. The Third Circuit has made clear that, "[i]n making a residual functional capacity determination, the ALJ must consider all evidence before [her]." *Id.* at 121 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)); *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)). Indeed, the ALJ "must give some indication of the evidence which [she] rejects and [her] reason(s) for discounting such evidence." *Id.* (citing *Plummer*, 185 F.3d at 429; *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Batista v. Astrue*, No. 09-3757, 2011 WL 1044923, at *6 (E.D. Pa. Mar. 22, 2011) (advising that when a court "cannot determine if relevant unmentioned evidence was dismissed as not credible or simply ignored during review, a remand is appropriate").

The instant record shows that on October 15, 2015, Dr. Fleischman completed a psychiatric evaluation of Ms. Saxon, which included, among other things, a detailed summary of Ms. Saxon's self-reported history of anxiety attacks and ability to function. R.536-39. Dr. Fleischman wrote that "[t]he results of the examination appear to be consistent with psychiatric problems that may significantly interfere with [Ms. Saxon's] ability to function on a daily basis," and further recommended that Ms. Saxon should "continue with psychological and psychiatric intervention as currently provided." R.538-39. Ms. Saxon's prognosis was described as "fair" noting that she is "still reporting symptoms despite treatment." R.539. Finally, Dr. Fleischman noted that Ms. Saxon had impaired attention, concentration, and memory skills, and opined that Ms. Saxon "will not be able to manage her own funds due to difficulty with arithmetic and current use of assistance." R.538-39.

Dr. Fleischman also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," where she identified several mild to moderate limitations. R.540-42. Of relevance to the instant appeal, Dr. Fleischman noted "moderate" limitations for Ms. Saxon's ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. R.540. She also noted "moderate" limitations for Ms. Saxon's ability to respond appropriately to usual work situations and changes in routine work setting. R.541. As of the date of the evaluation, Dr. Fleischman opined that Ms. Saxon could not manage benefits in her own best interest. R.542.

Yet, none of these findings were described in the ALJ's Decision, and the Commissioner does not contend otherwise. Rather, the Commissioner argues that because Dr. Fleischman's evaluation was issued several years before Ms. Saxon's application date, it was not within the relevant timeframe. ECF Doc. No. 13 at 15. In effect, the Commissioner appears to argue—without doing so explicitly—that the ALJ was not required to assess Dr. Fleischman's evaluation, or alternatively, that her failure to do so was harmless error.

The Court is not convinced. As an initial matter, the Court is not aware of any rule, regulation or other authority that defines "relevant" or so limits relevant evidence only to medical records that are developed within a certain timeframe of the claimant's application date. Thus, the Commissioner's citation to and reliance on 20 C.F.R. § 416.335 and 20 C.F.R. § 416.501 is inapposite. *See* ECF Doc. No. 13 at 14-15. Although these regulations explain the applicable "onset date" at which point benefits may be awarded, they do not restrict a claimant's ability to proffer evidence that may tend to prove their disability status at the time of their application. Indeed, these regulations say nothing about the relevance or weight of evidence that describes the claimant's alleged disabling conditions several years prior to the application date. Courts have long

explained that "[t]he mere fact that evidence exists prior to disability onset does not automatically mean that such evidence is not relevant, nor does it relieve an ALJ of the duty to explain why the evidence predating the onset date would not be afforded substantial weight." *McKean v. Colvin*, 150 F. Supp. 3d 406, 414 (M.D. Pa. Mar. 16, 2015); *see also Balthaser v. Kijakazi*, No. 20-CV-06181-RAL, 2022 WL 2828848, at *7 (E.D. Pa. July 20, 2022) ("It is not permissible to disregard an opinion, without evaluating it, simply because the opinion predates the alleged disability onset date."); *Sperring v. Berryhill*, No. CV 16-1555, 2018 WL 807165, at *2 (W.D. Pa. Feb. 9, 2018) (explaining that "[a]n ALJ is required to consider *all* medical opinions in the record," and that "[t]he regulations do not carve out an exception for medical opinions which predate the alleged onset of disability.") (emphasis in original) (citing 20 C.F.R. § 404.1527(c)(2)).[6] Here, Ms. Saxon has presented medical evidence describing a history of depression, anxiety, and other mental health issues dating back to 2013 to support her claim that she is currently disabled. This evidence included Dr. Fleischman's evaluation, and it was error to wholly ignore it.[7]

### B. The Court Cannot Conclude It Was Harmless Error For The ALJ To Ignore Dr. Fleischman's Opinion.

Next, the Commissioner then attempts to squarely address the substantive merits of Ms. Saxon's claims, arguing that Dr. Fleischman's identified limitations "are not disabling on their face," and therefore they have limited evidentiary value that would not have changed the ALJ's

---

[6] "The Third Circuit has also recognized that proper consideration of medical opinions that pre-date the disability onset date requires at least some explanation for rejecting an otherwise-relevant medical opinion in its entirety, and other courts in this Circuit have recommended remand where the ALJ ignored opinion evidence rendered before the disability onset date." *Noble o/b/o J.P.L. v. Kijakazi*, No. 22-CV-3408, 2023 WL 5182604, at *7 (E.D. Pa. Aug. 11, 2023) (citing *Giese v. Comm'r of Soc. Sec.*, 251 F. App'x 799, 804 (3d Cir. 2007)).

[7] When commencing her assessment of the "objective evidence," the ALJ explained that Ms. Saxon's "[r]ecords document a history of mental health treatment for depression and anxiety since 2013 with some significant gaps in treatment," before then describing progress notes from Central Behavioral Health in 2018. R. 25. Curiously, however, the ALJ entirely failed to acknowledge Dr. Fleischman's evaluation, which had been completed in 2015. R.536-544.

Decision. ECF Doc. No. 13 at 15. In effect, the Commissioner argues that the ALJ's omission here was harmless because her RFC determination would not have changed even if Dr. Fleischman's evaluation was appropriately considered.[8]

Again, the Court is not convinced. As an initial matter, courts in this Circuit have long explained that "[i]t is not for [the] Commissioner to make an after-the-fact argument in support of the ALJ's decision." *Griffies v. Astrue*, 855 F. Supp. 2d 257, 272 (D. Del. 2012) (citing *Foley v. Barnhart*, 432 F. Supp. 2d 465, 476 (M.D. Pa. 2005)). In other words, "[t]he analysis in the Commissioner's brief cannot substitute for the ALJ's analysis," and such "arguments can have no bearing on this Court's decision." *Id.*

More significantly, appropriate consideration of Dr. Fleischman's evaluation can plausibly inform further analysis of the other medical evidence in the record. For example, in his response brief, the Commissioner emphasized that in 2015 Dr. Fleischman only noted mild to moderate limitations in most areas of mental functioning, whereas Dr. Wolf-Schatz found Ms. Saxon to have marked to extreme limitations several years later. ECF. Doc. No. 13 at 16. This inconsistency, according to the Commissioner, demonstrates that even if Dr. Fleischman's opinion had been considered, the outcome would have been no different. But a more complete assessment of the evidence is necessary before this, or any other conclusion can be drawn. For example, Dr. Fleischman's evaluation described Ms. Saxon's prognosis as "fair," because Ms. Saxon was "still reporting symptoms despite treatment." R.539. Indeed, Dr. Fleischman explicitly recommended that Ms. Saxon "continue with psychological and psychiatric intervention as currently provided." (R.539). Yet, between Dr. Fleischman's evaluation and her application date, Ms. Saxon

---

[8] As noted previously, the Commissioner did not explicitly argue that the ALJ's failure to acknowledge Dr. Fleischman's opinion was "harmless."

experienced "significant gaps" in mental health treatment. R.25. Without appropriate and consistent access to treatment, it is entirely possible—indeed, understandable—that Ms. Saxon's functioning could worsen, as Dr. Wolf-Schatz found several years later as her treating psychiatrist.[9]

In short, it is not for the Court to re-weigh this evidence and make its own factual determinations. *See Chandler*, 667 F.3d at 359. That is the responsibility of the ALJ in the first instance. In situations like this, where the ALJ failed to offer *any* explanation for discounting or ignoring medical evidence in the record, the Court cannot find that the decision is supported by substantial evidence.[10]

---

[9] To be sure, both the ALJ and the Commissioner recognized that Ms. Saxon had "significant gaps" in treatment. *See* R.25; ECF Doc. No. 13 at 8. However, the Commissioner characterized these gaps as "periods of noncompliance," implicitly suggesting that Ms. Saxon was somehow to blame for this, or that her condition was perhaps not serious enough to warrant treatment. ECF Doc. No. 13 at 1, 8, 12, 13. Of course, there are several possible explanations for Ms. Saxon's "noncompliance." The record amply demonstrates that Ms. Saxon experienced numerous significant stressors during this timeframe including, but not limited to, several bouts with homelessness, the deaths of her mother, brother, and fiancé, and the murder of her son's friend. R.25, 400, 536, 707. Ms. Saxon also reported that she discontinued using certain antidepressants because it adversely affected her ability to connect with her children. R.319, 332, 467, 574, 697. Indeed, the ALJ herself did not once describe Ms. Saxon as "noncompliant" in assessing the objective medical evidence. R.24-26. But regardless of the reasons why, there is no dispute that Ms. Saxon did not receive treatment that Dr. Fleischman explicitly recommended, and it is clear that the ALJ did not consider the possible consequences of this when conducting the RFC determination.

The ALJ also noted that Ms. Saxon complained to her providers that her memory was getting worse, but discounted these reports on the grounds that her mental status examination in November of 2019 was "unremarkable," and that "[t]here was no mention of any impairment in her memory or concentration." R.25. However, this finding is not consistent with the full record when accounting for Dr. Fleischman's earlier evaluation. For example, Dr. Fleischman found that Ms. Saxon's attention and concentration skills were "[i]mpaired due to emotional distress resultant to current psychiatric disorder," and that her memory skills were "[i]mpaired due to emotional distress secondary to anxiety and depression." R.538. The ALJ's failure to account for this highlights why remand here is necessary. *See Batista*, 2011 WL 1044923, at *6 (advising that when a court "cannot determine if relevant unmentioned evidence was dismissed as not credible or simply ignored during review, a remand is appropriate").

[10] The Court does not express an opinion on how persuasive the Commissioner's substantive analysis of Dr. Fleischman's evaluation would have been had the ALJ actually made it. Nor does the Court express a comprehensive opinion on the adequacy of the ALJ's findings concerning Dr. Wolf-Schatz's medical opinion. In holding that remand is appropriate on the limited grounds that the ALJ improperly ignored Dr. Fleischman's evaluation, the Court emphasizes that the ALJ's written decision on remand must include a "clear and satisfactory" explanation of the RFC determination, which contains enough detail to permit meaningful judicial review. *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (quoting *Cotter*, 642 F.2d at 704). Conclusory assertions will not be sufficient. Where, for example, the ALJ finds a medical opinion is not persuasive because it is inconsistent with the provider's own treatment notes, the decision should cite to those specific records that the opinion is allegedly inconsistent with or unsupported by, and/or provide concrete examples of the same. *See Moldavsky v. Kijakazi*, No. CV 22-1447, 2023 WL 3570927, at *5 (E.D. Pa. May 19, 2023) (finding remand appropriate where the ALJ's reasons for rejecting a medical opinion

## IV. CONCLUSION

For the reasons explained above, Ms. Saxon's request for review is **GRANTED**. This Court cannot determine whether the ALJ's Decision is supported by substantial evidence because the ALJ entirely failed to address, let alone assess, Dr. Fleischman's psychiatric evaluation when conducting the RFC analysis. Therefore, the final decision of the Commissioner of Social Security is **REVERSED**, and this matter is **REMANDED** to the Commissioner for further proceedings in accordance with this opinion. An appropriate Order follows.

BY THE COURT:

*s/Pamela A. Carlos*
PAMELA A. CARLOS
U.S. Magistrate Judge

---

were limited to the conclusory assertion that the opinion was not supported by the doctor's own medical records). The ALJ must also consider the supportability of the medical opinions in the record, the consistency of the opinion, the medical source's relationship with the claimant, and the medical source's specialization, as is required by the applicable regulations. *See* 20 C.F.R. § 404.1520c.